## Montgomery *against* St. Stephen's Church.

The defendants, a church, executed and delivered to the plaintiff a writing under seal, reciting that the plaintiff having loaned them a sum of money was "entitled to receive payment of the same without interest from the sales of the following pews," (enumerating them)—payment *pro rata* to be made when any sale was effected, and the purchase money received.

*Held,* 1. That if the loan of money was cotemporaneous with the execution of the instrument, the plaintiff could not recover in debt on the instrument without averring a sale of the pews or a refusal to sell them by the defendants.

2. But on a count in debt for money lent, the instrument may be treated as an acknowledgment of a debt previously contracted, and a pledge of a fund or of collateral security for its liquidation, and submitted to the jury.

ERROR to the District Court of the city and county of *Philadelphia*.

This was an action of debt brought by Austin Montgomery against The Rector, Churchwardens and Vestry of St. Stephen's Church. The first count of the declaration stated "that whereas the said The Rector, Churchwardens and Vestry of St. Stephen's Church, on the 25th day of March 1826, at the city and county aforesaid, by their certain bill obligatory with their seal sealed, and to the court here shown, the date whereof is the day and year aforesaid, acknowledged themselves to be indebted to the said Austin Montgomery in the sum of $1700 lawful money aforesaid, to be paid to the said Austin, when thereto they should be required: yet the said The Rector, Churchwardens and Vestry of St. Stephen's Church, although often requested, the aforesaid $1700, or any part thereof, to the said Austin have not paid, but the same to him to pay have altogether refused, &c."

The second count was the common count in debt for money lent to the defendants, to wit: the sum of $1700 to be paid by them to the plaintiff when they should be thereunto afterwards requested, and averred, that though often requested, the defendants had not paid, &c.

The defendants craved oyer of the bill obligatory mentioned in the first count, and which was as follows:

"Be it remembered, that Austin Montgomery having loaned to The Rector, Churchwardens and Vestry of St. Stephen's Church, the sum of $1700, is entitled to receive payment of the same without interest, from the sales of the following pews, viz: Nos. 8, 14, 16, 17, 18, 19, 20, 21, 22, 23, 51, 53, 54, 55, 58, 59, 60, 61, 62, 63, 64, 65, 66, 69, 70, 71, 74, 92, 100, 101, 102, 103, 104, 106, 107, 108, 109, 110, and 122, all down stairs, and the whole of the gal-

[Montgomery v. St. Stephen's Church.]

lery pews, excepting Nos. 4, 11, 46, and 49, payment *pro rata* to be made when any sale is effected, and the purchase money received.

" Witness the seal of the Corporation aforesaid, this 25th day of March 1826.

[SEAL.]                          " W. J. BELL, *Warden.*"

The defendants demurred specially to the first count of the declaration, and assigned the following causes of demurrer: 1. " That the plaintiff has in the said count misstated the instrument declared upon, and omitted material parts of the same which qualify the contract, and render it dissimilar to that described in the count." 2. " That there is a material variance between the deed declared upon, and that produced on oyer, in this, that the deed declared on is an absolute engagement, whereas that produced is a conditional one." 3. " That the plaintiff has not averred in his declaration, that the pews mentioned in the said bill, or any of them, have been sold, nor that he ever requested the defendants to sell the same or any of them." 4. " And for that it does not appear by the said count, that the plaintiff has any cause of action against the said defendants."

To the second count the defendants pleaded *nil debent.* The plaintiff joined in demurrer, and replied to and took issue upon the plea to the second count.

The court gave judgment for the defendants upon the demurrer, and afterwards the cause came to be tried upon the second count of the declaration and the issue formed by the plea and replication to it, and the plaintiff offered in evidence the bill obligatory of which oyer was had. The defendants objected to the bill being given in evidence, though they admitted its due execution by them, and the judge sustained the objection and nonsuited the plaintiff, which nonsuit the court in bank refused to set aside.

Errors assigned:

1. The court erred in giving judgment for the defendants on the demurrer to the first count of the declaration.

2. In sustaining the nonsuit ordered by the judge upon the trial of the issue upon the second count of the declaration.

*Ingraham*, for the plaintiff in error. The mode of stating a specialty may be according to its legal effect, without using a single word of the deed declared upon, and it is only necessary to state the defendant's liability without stating the consideration upon which it is founded. *Chitt. Plead.* 311, 314 (*Edit.* 1828.) Now the instrument in this case recognizes that a loan of $1700 had been made by the plaintiff to the defendants; and no time of payment being stated, it was payable immediately. To loan means to hand to another for a temporary purpose, to be returned in kind; and that was the obligation of the defendants. 1 *Baldw.* 493. Did the voluntary recognition of the loan by the defendants,

[Montgomery v. St. Stephen's Church.]

under seal, after it was made, and their saying that they would apply the proceeds of certain real estate—a particular fund—of which they, the debtors, retained the ownership and management exclusively, alter their responsibility, or take away the lender's remedy upon the acknowledgment under seal? If so, any individual who writes a letter, and says he owes a precedent debt, and that out of the proceeds of some property, which he means to sell, he will pay it, gets rid of his personal liability, and transfers the claim of the creditor to the fund so to be raised. Any giving further security for a debt, after it is contracted, by a pledge, would have the same effect. Even where the creditor has the power to make sale of or to dispose of the pledged property, this is not the doctrine—he may sue the obligation, or raise the fund from the pledge. 3 *Leon.* 223; 4 *Leon.* 208; 15 *Wend.* 218.

But, putting the first count out of the question, there was nothing to prevent the plaintiff from recovering on the second. The right to receive the payment stated in the instrument was clearly a mere collateral security. It did not disturb the relation of debtor and creditor. It was not payment, and it is nowhere said in the instrument that it is satisfaction of the debt. It gives the plaintiff no interest in the pews, nor any right to dispose of them, or to control or receive the sales. To allow the power claimed for it by the defendants, would suspend the plaintiff's right to his money at the pleasure of the debtors, who do not even undertake to sell the pews, or to pay over the money. Suppose the pews were all to be sold for less than the debt, would the debt be paid? The authorities are express that it would not. 4 *Watts* 128; 4 *Wash. C. C. Rep.* 308; 1 *Serg. & Rawle* 296; 5 *Rawle* 166; 4 *Watts* 378. If this, therefore, be collateral security, there is no variance between either count of this declaration and the instrument produced. The declaration states the legal obligation, and does not describe the consideration; and it is well settled, that the consideration and discharge of an obligation do not in any way qualify it; it is complete without them. 1 *Howard's Miss. Rep.* 195, 220.

*Kirkham* and *T. I. Wharton*, for the defendants in error. It may be true that a naked acknowledgment of indebtedness will give a right of action, but that is only when no other specific remedy is given; when that is the case, the specific remedy must be pursued. Now here the instrument gives a right to payment out of a specific fund, and containing no express covenant for the payment of the money set forth in it, the remedy of the plaintiff is confined to that fund, and he cannot support debt against the defendants. 10 *Johns.* 57; *Cro. Jac.* 282. At least he cannot do so until a sale of the pews has shown a deficit, or the defendants refuse, upon request, to sell them, all of which must be shown by proper averments in the narr. 11 *Wend.* 106.

[Montgomery v. St. Stephen's Church.]

The opinion of the Court was delivered by

ROGERS, J.—Several special causes of error have been assigned, but they resolve themselves into one question, viz: whether the instrument declared on is an absolute or conditional contract.　If it be the latter, an averment is essential that the pews, or some of them, were sold, or that there was a refusal to sell on request made by the plaintiff.　If the loan of the money and the execution of the instrument declared on were cotemporaneous acts, and this the first count assumes them to be, we are inclined to believe it must be taken as a conditional, and not an absolute engagement.　The instrument must be construed according to the intention of the parties, and it is difficult to believe that it was intended that Montgomery should have the right to sue the church the day after the contract was sealed, the inevitable effect of the construction put upon it by the plaintiff.　But, on the supposition that the money was loaned on the day of the date of the instrument, it would rather strike us to have been a concerted movement among certain members of the corporation to effect a loan, and to look exclusively for reimbursement to the funds of the church, derived from the sales of certain pews particularly enumerated; the proceeds of which, when received, to be divided *pro rata* among them. This, we think, is the true reading of the contract, on the supposition as above stated; and from this it will follow that to sustain the suit until default be made, would be an injury to the contributors as well as the defendant; as *non constat*, that the money would have been borrowed on any other terms, or that the other contributors would have advanced the money on any other conditions.　*Gore and Wingfield's Case*, (3 *Leon.* 223, and 4 *Leon.* 208), has been cited as an authority on this point.　But there the obligee had a double remedy; to bring his action on the instrument, or to levy his money according to the clause in the obligation.　There was nothing in the bond which would warrant the idea that the money due was to be paid in a particular manner, or out of a specified fund.　The plaintiff was at liberty, therefore, as was ruled, to bring his suit on the obligation, or to levy his money according to the condition.

The words, however, of this obligation are peculiar: " Be it remembered, that Austin Montgomery having loaned to the Rector, Churchwardens and Vestry of St. Stephen's Church the sum of $1700, is entitled to receive payment of the same, without interest, from the sales of the following pews, viz: Nos. 8, 14, &c., all down stairs, and the whole of the gallery pews, excepting Nos. 4, 11, &c., payment *pro rata* to be made when any sale is effected, and the purchase money received."　An inspection of the instrument leads to the conclusion that it is the acknowledgment of a debt previously contracted, and the pledge of a fund for its gradual liquidation, by sales of certain pews afterwards to be made.　In this view the evidence ought to be submitted to the jury; for then

the agreement would be nothing more than a collateral security or pledge for the debt. The case of *Charles* v. *Scott*, (1 *Serg. & Rawle* 296), is an authority in point, that an agreement, although under seal, accepted as a collateral security, is not a merger of a simple contract debt, and may be read in evidence to show the amount originally due. *Kemmill* v. *Wilson*, (4 *Wash. C. C. R.* 308); *Perit* v. *Pittfield*, (5 *Rawle* 166).

We are of opinion, therefore, that the court was right in giving judgment for the defendant on the demurrer, but that there was error in overruling the evidence offered on the second count for money lent.

Judgment reversed, and a *venire de novo* awarded.